14-2893-cr
United States v. Fernandez

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of January, two thousand sixteen.

PRESENT:  REENA RAGGI,
          DENNY CHIN,
          CHRISTOPHER F. DRONEY,
                    *Circuit Judges.*

-----------------------------------------------------------------------

UNITED STATES OF AMERICA,
                    *Appellee*,

                    v.                                  No. 14-2893-cr

ANGELO FERNANDEZ, AKA Sealed Defendant 2, AKA Scarface,

                    *Defendant-Appellant*,

ALEXIS AZCONA, HECTOR MELENDEZ, AKA Sealed Defendant 3, JEFFREY MINAYA, AKA Sealed Defendant 4, AKA Gago, ELSIO RIVERA, AKA Sealed Defendant 6, AKA Fizz, DANIEL MONTANEZ, AKA Sealed Defendant 5,

                    *Defendants.*

-----------------------------------------------------------------------

APPEARING FOR APPELLANT:        KELLEY J. SHARKEY, ESQ., Brooklyn, New York.

APPEARING FOR APPELLEE: BROOKE CUCINELLA, Assistant United States Attorney (Damian Williams, Margaret Garnett, Assistant United States Attorneys, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on July 30, 2014, is AFFIRMED.

Defendant Angelo Fernandez stands convicted after trial of conspiracy to distribute and possess with intent to distribute (1) 280 grams or more of crack cocaine, and (2) less than 50 kilograms of marijuana. See 21 U.S.C. §§ 841(a)(1), (b)(1)(A) (b)(1)(D), 846.[1] On appeal, Fernandez argues that (1) the evidence was insufficient to support his conviction, (2) his within-Guidelines sentence of 325 months' imprisonment is procedurally unreasonable because the district court erred in applying U.S.S.G. § 2D1.1(b)(1) and (b)(2) enhancements, and (3) judicial fact-finding supporting the application of those enhancements violated the Sixth Amendment.[2] We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

---

[1] The jury acquitted Fernandez of possessing a firearm in furtherance of the drug trafficking conspiracy. See 18 U.S.C. § 924(c)(1)(A)(i).

[2] Although Fernandez submitted a pro se letter dated June 3, 2015, seeking to delay his appeal to permit resolution of a Fed. R. Civ. P. 60(b) motion before the district court, Fernandez subsequently withdrew his Rule 60(b) motion.

2

1. <u>Sufficiency Challenge</u>

We review a sufficiency challenge <u>de novo</u> and must affirm the conviction if, "viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original); <u>accord</u> <u>United States v. Kozeny</u>, 667 F.3d 122, 139 (2d Cir. 2011). In conducting such review, we are mindful that the government is entitled to prove a defendant's knowing participation in a conspiracy through circumstantial evidence. <u>See</u> <u>United States v. Anderson</u>, 747 F.3d 51, 60 (2d Cir. 2014).

Fernandez submits that the record was insufficient to demonstrate his membership in the charged conspiracy because there was no evidence that he handled or sold narcotics. The argument fails because, even if Fernandez was not seen in personal possession of narcotics, the record shows that he led the drug operation at 1360 Plimpton Avenue. Confederate Daniel Montanez identified Fernandez as the "boss" who "puts the money up" for the drugs distributed by the operation. Gov't Ex. 220T at 3, 9–10; <u>see</u> <u>United States v. Diaz</u>, 176 F.3d 52, 92 (2d Cir. 1999) (holding that conviction may be sustained on basis of testimony of single accomplice, so long as testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt). This role was corroborated by e-mail addresses linked to Fernandez in the names "Plimpton King" and "El Patron," meaning "the boss." Trial Tr. 158. Further, a former superintendent of 1360 Plimpton Avenue, Rafael Rodriguez, testified that he

3

understood Fernandez to be in charge of the building's drug operation based in part on his observation that Fernandez often "exchange[d] money" with one of his confederates, Hector Melendez, who "was the seller at that point." Id. at 206–07, 209.

Fernandez's leadership role was further evidenced by testimony of his treatment of "workers," Gov't Ex. 220T at 7, 12, and by his threats to the building manager and former superintendents when they attempted to stop drug activity in the building, see Trial Tr. 224–28 (former superintendent testifying that, after he alerted police to building drug activity, Fernandez came to his apartment threatening to "stab everybody up"); id. at 259–65 (building manager testifying that Fernandez confronted him about interfering with his business); id. at 455–56 (another former superintendent testifying that Fernandez and another man told him they suspected he had called police and that "it could be dangerous for him").

Viewed in the light most favorable to the government, this evidence supported a jury finding beyond a reasonable doubt that Fernandez not only "knew of the existence of the scheme alleged in the indictment," but also "knowingly joined and participated in it" as the leader. United States v. Binday, 804 F.3d 558, 589–90 (2d Cir. 2015) (internal quotation marks omitted). Thus, Fernandez's sufficiency challenge fails on the merits.

2. Sentencing Challenges

a. Procedural Reasonableness

Fernandez argues that there was insufficient evidence to warrant enhancements under U.S.S.G. § 2D1.1(b)(1) and (b)(2). We review a district court's factual findings

4

underlying a Guidelines calculation for clear error, see United States v. Watkins, 667 F.3d 254, 261 (2d Cir. 2012), mindful that such findings need be supported only by a preponderance of the evidence, see United States v. Awan, 607 F.3d 306, 312 (2d Cir. 2010).

A § 2D1.1(b)(1) two-level enhancement applies "[i]f a dangerous weapon (including a firearm) was possessed" in connection with the unlawful trafficking or possession of drugs. See U.S.S.G. § 2D1.1(b)(1). Here, we identify no error—let alone clear error—in the district court's factual determination that Fernandez possessed a firearm in 2004 when he shot Itzel Casanova, or that the shooting was in connection with the charged narcotics conspiracy. As the district court explained, the record showed that Fernandez shot Casanova on October 3, 2004, soon after they had argued about Fernandez's unauthorized use of her then-vacant apartment at 1360 Plimpton Avenue to "cut[] up drugs." Trial Tr. 45. Casanova detailed the argument at trial and, at the grand jury, both Casanova and another witness testified that at a lineup they each identified Fernandez as the "shooter" from the incident. Fernandez subsequently pleaded guilty to criminally possessing a weapon on October 3, 2004.[3]

A § 2D1.1(b)(2) two-level enhancement applies when violence or credible threats of violence are used in furtherance of a narcotics conspiracy. See U.S.S.G. § 2D1.1(b)(2). The district court's findings in this regard are supported by (1) the 2004

---

[3] Because this 2004 firearm possession sufficiently supports the § 2D1.1(b)(1) enhancement, we need not address the district court's further finding as to Fernandez's possession of a firearm retrieved in 2009 from his girlfriend's apartment.

5

shooting of Casanova, and (2) threats made to superintendent Rodriguez after he notified police of the drug activity at 1360 Plimpton Avenue. Fernandez's argument that the threat to Rodriguez was made by Jeffrey Minaya and, therefore, should not be attributed to Fernandez, is defeated by Rodriguez's trial testimony, which recounts that after Minaya came to Rodriguez's door (with Fernandez) and told Rodriguez "they had a problem" because Rodriguez had called the police, Rodriguez heard Fernandez outside his window saying "he would go up in there and he would stab everybody up," which Rodriguez understood to mean Fernandez would "kill [Rodriguez's] whole family." Trial Tr. 227–28. These circumstances support a § 2D1.1(b)(2) enhancement.

b. Alleged Sixth Amendment Violation

Relying on Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 133 S. Ct. 2151 (2013), Fernandez faults the application of § 2D1.1(b)(1) and (b)(2) enhancements based on facts found by the district court rather than the jury. This argument fails because the district court's findings supporting these enhancements affected only the calculation of the non-binding Guidelines, see United States v. Booker, 543 U.S. 220 (2005), and did not trigger a statutory minimum or maximum penalty, see Alleyne v. United States, 133 S. Ct. at 2155 (holding that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury"); Apprendi v. New Jersey, 530 U.S. at 490 (holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). The Supreme Court recognized in Alleyne that the Sixth

6

Amendment does <u>not</u> apply to "factfinding used to guide judicial discretion in selecting a punishment within limits fixed by law," even though "such findings of fact may lead judges to select sentences that are more severe than the ones they would have selected without those facts." <u>Alleyne v. United States</u>, 133 S. Ct. at 2161 n.2.

The district court, therefore, did not err in making factual findings when calculating Fernandez's Guidelines range.

3.      <u>Conclusion</u>

We have considered Fernandez's remaining arguments and conclude that they are without merit.   Accordingly, we AFFIRM the judgment of the district court.

<div style="margin-left: 40%;">
FOR THE COURT:<br>
CATHERINE O'HAGAN WOLFE, Clerk of Court
</div>